**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NOBLE DRILLING, INC.**                              **CIVIL ACTION**

**VERSUS**                                            **NO. 10-2865**

**M/V OSC VLISTDIEP**                                 **SECTION "D" (3)**
**FEEDERLINES B.V. and**
**ASSURANCEFORENINGEN SKULD**

**ORDER AND REASONS**

Before the Court are the following motions, to wit: (1) Motion to Dismiss Direct Action

(Doc. 23) filed by Defendant, Assuranceforeningen Skuld (Skuld);[1] (2) Motion for Partial

Summary Judgment (Doc. 19) filed by Plaintiff Noble Drilling, Inc., seeking declarations that the

Harter Act supplies the applicable substantive law and that the Bill of Lading's exculpatory

clause is void;[2] and (3) Motion to Dismiss Case Pursuant to Rule 12(b)(3) and, alternatively, on

grounds of *forum non conveniens* (Doc. 24) filed by Defendants, Scheepvaartonderneming MS

Vlistdiep C.V. Ltd (as claimant of the M/V OSC VLISDIEP), Feederlines B.V. and

Assuranceforeningen Skuld.[3]

---

[1]No opposition was filed.

[2]Defendants filed a memorandum in Opposition (Doc. No. 35), to which Plaintiff replied
(Doc. No. 42).

[3]Plaintiff filed a memorandum in opposition (Doc. No. 30), to which Defendants replied
(Doc. No. 38).

The matters, set for hearing on Wednesday, April 6, 2011, were deemed submitted on the briefs without oral hearing.[4]  Having considered the record, the submissions of the parties, the applicable law and, for the reasons set forth below, the court has determined that the Defendants' Rule 12(b)(3) Motion to Dismiss the Case (Doc. No. 24) has merit; therefore, the court need not address Skuld's Unopposed Motion to Dismiss Direct Action (Doc. No. 23) which is moot or Plaintiff's Motion for Partial Summary Judgment (Doc. No. 19), thus leaving the issues of choice of law to courts in The Netherlands.

## I. Procedural Background and Relevant Undisputed Facts

Plaintiff in this cargo loss case is the consignee, Noble Drilling Inc., a Delaware Corporation with offices and places of business in Baton Rouge, Louisiana and Houston, Texas.[5] This case involves a dispute over cargo of 20 risers stowed on deck and, all but one, lost overboard during trans-Atlantic transit via the M/V OSC VLISDIEP en route from Rotterdam, The Netherlands (loading port) to  Port Fourchon, Louisiana (destination).[6]  Only one of twenty (20) risers shipped from The Netherlands's (Dutch) port city, Rotterdam, was discharged in Port Fourchon, Louisiana, the balance (19) having been lost overboard in transit across the Atlantic Ocean.  Suffice it to say, this is a cargo loss case – *i.e.*, cargo lost at sea and never unloaded at any port (U.S. or foreign).

Defendants, Scheepvaartonderneming MS Vlistdiep C.V. Ltd (Scheepvaartonderneming), as claimant for the M/V OSC VLISTDIEP, Feederlines B.V. (Feederlines) and

---

[4]Order signed April 1, 2011 (Doc. No. 34).

[5] Verified Complaint at Addendum A (Doc. No. 1).

[6]*See* Verified Complaint at ¶F and Schedule A (stating "Part of the Shipment...was lost overboard in transit" and  "Nature of Loss or Damage: Partial Loss – 19 Risers) (Doc. No. 1).

Assuranceforeningen Skuld (Skuld) filed an Answer and Third Party Complaint against Onega Shipping & Chartering (Onega), claiming that plaintiff failed to state a cause or right of action upon which relief can be granted, Louisiana's Direct Action Statute does not apply to this matter and the complaint fails to include necessary and indispensable parties, *inter alia*.[7]  Third Party Defendant, Onega, filed an Answer to Third Party Complaint claiming defenses under Fed. R. Civ. P. 12(b)(2), (3), (4), (5) and (6), that original plaintiff's and third-party plaintiff's claims against it must fail because the applicable bill of lading and other contracts of carriage are subject to a valid forum selection clause, a valid arbitration clause and/or choice of law and jurisdiction clause and that Onega will show that original Plaintiff, by its own custom and practice, was aware of the carriage of this type of cargo on deck, consented to, approved and was involved in arranging for same and thus any alleged damages/recovery should be barred and/or reduced accordingly, *inter alia*.[8]

It is further undisputed that the lost 19 out of 20 risers were being carried on deck under a Bimco Liner form Booking note and Bill of Lading, both signed in The Netherlands.[9]  The Booking Note dated December 18, 2009 was signed by the Dutch time charterer/carrier Onego

---

[7]*See* Answer and Third Party Complaint against Onega Shipping and Chartering ("Onega") (Doc. No. 8).

[8]*See* Answer to Third Party Complaint filed by Onega (Doc. No. 29).

[9]*See* Defendants' Responses to Noble's Request for Production Nos. 2 and 17 (Doc. No. 36-4); BIMCO LINER BOOKING NOTE ("CONLINEBOOKING 2000 " hereafter "Booking Note") (Δ's Exh. A/Doc. No. 24-2 and Δ's Exh. B/Doc. No. 36-5); BIMCO LINER BILL OF LADING ("CONLINEBILL 2000 " hereafter Bill of Lading) ONE VLI ROT 120901 (Δ's Exh. B/Doc. No. 24-2 and Δ's Exh. C/Doc. No. 36-6).  *Compare* BIMCO LINER BILL OF LADING No. ONE VLI ROT 120901(submitted in support of Plaintiff's Motion for Partial Summary Judgment, which bill of lading is identical to Δ's Exh. B and C/Doc. Nos. 24-2 and 36-6) (Pltf's Exh. A/Doc. No. 19-2).

Shipping and Chartering B.V, while Bill of Lading ( No. ONE VIO ROT 120901) was signed by

GAC Netherlands Limited on behalf of the master of the OSC VLISDIEP.[10]   The terms and

conditions of the Bill of Lading and the Booking Note are identical, both referring to the date of

shipment of shipper's 20 risers as December 24, 2009.   Noble Drilling Land (Nederland) BV

(shipper) and Noble Drilling, Inc. (consignee) were parties to the aforesaid bill of lading.   In fact,

Noble signed page 2 of the Bill of Lading and appended the identical executed Bimco Liner form

Bill of Lading to its own Motion for Partial Summary Judgment, authenticating it.[11] (Pltf's Exh.

A/Doc. No. 19-2)   The subject Bill of Lading No. ONE VLI ROT 120901 contained a forum

selection, which provides:

> "4. Law and Jurisdiction.
> Disputes arising out of or in connection with this Bill of Lading **shall be
> exclusively determined by the courts in** accordance with the law of **the place
> where the Carrier has his principal place of business**, as stated on page 1,
> except as provided elsewhere herein."[12]

The following facts regarding the subject vessel, lost cargo, and business

records/documents evidencing carriage are not *genuinely* disputed:

**The Vessel/ M/V OSC VLISDIEP**

- is a Netherlands (Dutch) flagged vessel;

- owned by Dutch entity, Scheepvaartonderneming MS Vlistdiep C.V. Ltd;

- managed by Dutch entity, Feederlines, B. V.; and

---

[10]Booking Note and Bill of Lading No. ONE VLI ROT 120901 (Exh. A/Doc. No. 24-2 and Exh. B/Doc. No. 24-2, respectively).

[11]*See also* Plaintiff's Statement of Material Facts at ¶ 3 (Doc. No. 19-4).

[12]Bill of Lading at Clause 4 No. ONE VLI ROT 120901(bolding emphasis added to denote forum selection/jurisdiction)(Δ's Exh. B/Doc. 24-2, Δ's Exh. C/Doc. No. 36-6, Plt's Exh. A/Doc. No. 19-2).

•   chartered by Dutch entity Onego Shipping and Chartering B.V.

**The 19 Lost Risers and Cradle ("Packing")**

•   were manufactured or fabricated by Dutch entities;[13]

•   were shipped by Dutch entity, Noble Drilling (Nederland) B.V. (shipper);

•   were loaded in the Dutch port Rotterdam by Dutch nationals;

•   were lost at sea approximately 200 miles off the coast of Spain and never delivered to any port;[14]

•   their loading/stowage on deck was surveyed in Rotterdam, Netherlands by Dutch surveyor, H.G.C. Van Der Poel Marine Consultancy BV, on behalf of Noble Drilling;

•   freight forwarding payments were made by Dutch entity, Noble Drilling (Nederland) B.V. to its Dutch freight forwarder CEVA Freight Holland B.V.; and

•   the lost cargo was carried under a Bimco Liner form booking note/Bimco Liner form Bill of Lading ONE VLI ROT 120901.[15]

**Bimco Liner Bill of Lading ONE VLI ROT 120901/booking note dated 12/18/09**:

•   were both signed in The Netherlands;

•   the Booking Note was signed by time charterer Onego Shipping and Chartering B.V.;

---

[13]CEVA Logistics Quotation Forms for the making and installation of cradles of the twenty (20) risers in Husman, Schiedam, The Netherlands (Δ's Exh. E, Doc. No. 36-8 at pp, 1-2).

[14]*See* Initial Disclosures/Sea Protest dated January 16, 2010 (stating that "due to ... weather conditions the vessel lost on the 31st of December, 2009 at 18:10 UTC on position 43° 12.2' N 014° 50.2' W 19 Risers and 1 Colli reiser tentioner hose of the deck cargo") (Pltf's Exh. G Doc. No. 30-8 at pp. 12-13 of 13); Mate's Receipt dated 16 December 2009 (re 1 Colli Reiser Tentioner Hose)) (Pltf's Exh. A/ Doc. No. 30-2 at p. 38 of 41).

[15]Defendants' Response to *Plaintiff's* Request for Admission No. 11 (admitting "Exh. 1[Bill of Lading No. ONE VLI ROT 120901] is a true and accurate copy of the bill of lading issued in this matter") (Doc. No. 36-4 at p. 5 of 39).

- the Bill of Lading was signed by GAC Netherlands Ltd. on behalf the master of the OSC VLISTDIEP and referred to a document dated December 18, 2009, which is the date of the Booking Note;

- the Bill of Lading was signed on page 2 (where the forum selection clause appears) by Noble's representative and stamped with Noble's seal.[16]

Defendant, Assuranceforeningen Skuld (a Dutch entity), is the marine insurer which provided protection and indemnity (P & I) coverage to shipowners.  In 2009, the OSC VLISTDIEP was entered for P & I coverage with Skuld on behalf of her owner, Scheepvaartonderneming.   Documents evidencing coverage in this matter were prepared in Norway and delivered to the parties at their principal place of business in The Netherlands.  None of the paperwork or policies were written or delivered in the State of Louisiana.[17]

Noble Drilling sued Assuranceforeningen Skuld directly as a defendant in the above captioned matter, claiming Skuld, as the liability insurer of the vessel, is liable to Noble Drilling for damages it in incurred as a result of the lost risers.[18]  Assuranceforeningen Skuld filed a Motion to Dismiss Direct Action which is unopposed.[19]

---

[16]*See* Bimco Liner Bill of Lading No. ONE VLI ROT 120901(Δ's Exh. B and C/Doc. Nos. 24-2 and 36-6 and Pltf's Exh. A/Doc. No. 19-2);  Defendants' Response to Plaintiff's Request for Admission No. 11 (admitting "Exh. 1[Bill of Lading No. ONE VLI ROT 120901] is a true and accurate copy of the bill of lading issued in this matter") (Doc. No. 36-4 at p. 5 of 39); Affidavit of Robert J. Barbier (Doc. No. 36-10); Hill Rivkins LLP's (Noble's) July 1, 2010 Pre-Suit Demand Letter (referencing Bill of Lading No. ONE VLI ROT 120901 dated December 24, 2010) (Δ's Exh. D/Doc. No. 36-7).

[17]*See* Affidavit of the Vice President of Skuld North America Inc. (Doc. No. 23-2).

[18]Verified Complaint (Doc. No. 1).

[19]Skuld's Motion to Dismiss Direct Action (Doc. No. 23).

## II. Defendants' Motion to Dismiss Case

Defendants' motion seeks an order from this court dismissing Noble Drilling, Inc.'s (Noble's) case either based on a forum selection clause, Clause 4, contained in the subject bill of lading pursuant to Rule 12(b)(3) and, alternatively, on grounds of *forum non conveniens*.  Noble argues that the forum selection clause (Clause 4) on Page 2 of the Bill of Lading, which it signed and sealed, is not "mandatory" because the parties failed to specify the "carrier's name/principal place of business" on Page 1 of the Bill of Lading and, otherwise, fails to meet the standard for enforceability citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[20]

Defendants counter that, regardless of what appears in a box on the front of the bill of lading and considering the undisputed facts of this case, the forum selection/choice of law clause is "mandatory," "exclusive," and unambiguous.  In this regard, defendants note the precise language provided in bill of lading, which states that any dispute "shall be exclusively determined" in the "place where the carrier has its principal place of business."[21]  As to the parties intentions, Defendants argue that they are clear and unmistakable, to wit: (1) the Bimco Liner Bill of Lading specifically refers to a document dated December 18, 2009, incorporating all of its terms and conditions; (2) the Bimco Liner Booking Note issued with respect to the subject cargo dated December 18, 2009 indicates the full name and address of time charterer/carrier Onega

---

[20]In *Bremen,* the Supreme Court held that forum selection clauses should be enforced unless the resisting party can "clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching .... [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15, 92 S.Ct. at 1916.

[21]*See* Bill of Lading No. ONE VLI ROT 120901 (Δ's Exh. B/Doc. No. 24-2).

Shipping and Chartering, BV, Spui 24, 3161 ED Rhoon, Netherlands;[22] and (3) the bill of lading,

signed by Noble,  also specifically refers to the Vessel (MV "OSC VLISTDIEP) and the

particular cargo – *i.e.*, 20 risers loaded in Rotterdam, Netherlands.  Essentially, defendants

contend that Clause 4 is "mandatory" and not conditioned upon defendants having actually filled

in the box on Page 1 of the Bill of Lading, as Noble contends.[23]  More particularly as to the

parties intentions, Defendants highlight that it cannot be genuinely disputed that Noble Drilling

Land (Nederland) B.V.'s representative was well-aware of the fact that Onego and the vessel as

well as her owners/managers were all Dutch entities.  Both Noble Drilling Inc (consignee) and its

representative Noble Drilling Land (Nederland) B.V. were parties to the bill of lading signed by

Noble, *inter alia*.   Defendant's position is that competent undisputed evidence demonstrates that

The Netherlands far outstrips the U.S. on the convenience continuum and, in light of the fact that

COGSA does not apply to the subject cargo which was carried *on deck,* consideration of the

public factors likewise militate strongly in favor of dismissal pursuant to Rule 12(b)(3).  In sum,

Defendants contend that Plaintiff has failed to carry its burden under the *Bremen* test.[24]

### III. Standard of Review

The Defendants first seek dismissal under Fed. R. Civ. P. 12(b) (3) (improper venue).  The

Fifth Circuit has "accepted Rule 12(b) (3) as a proper method for seeking dismissal based on a

---

[22]Bimco Liner Booking Note dated December 18, 2009 (re: "Risers" - "20-23 pieces" - "deck cargo to be loaded at charterers/shippers/receivers risk and expense and bills of lading to be claused accordingly") (Δ's Exh. A/Doc. No. 24-2 andΔ's Exh. B/Doc. No. 36-5).

[23]*See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss at p. 2 (Doc. No. 30); Defendants' Reply Brief at pp. 2-3 (Doc. No. 38)

[24]*See M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-13, 18, 92 S.Ct. 1901, 1914, 1917, 32 L.Ed.2d 513 (1972) (discussed herein at pp. 12-13, *infra*).

forum selection clause."[25]   A motion to dismiss for improper venue based on a forum selection

clause is properly based on either Rule 12(b)(1) or Rule 12(b)(3).[26]   In *Abraco, Inc. v. Bossclip*

*B.V.,* 570 F.3d 233 (5th Cir. 2009), the Fifth Circuit explained:

> "[U]nder both Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at the
> evidence of record beyond simply those facts alleged in the complaint and its
> proper attachments."   *Ginter,* 536 F.3d at 449 (citing *Lane ex rel. Lane v.*
> *Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008) ("[T]he court may find a plausible
> set of facts by considering any of the following: (1) the complaint alone; (2) the
> complaint supplemented by the undisputed facts evidenced in the record; or (3) the
> complaint supplemented by undisputed facts plus the court's resolution of disputed
> facts." (internal quotation marks omitted))); *Murphy v. Schneider Nat'l Inc.,* 362
> F.3d 1133, 1138-40 (9th Cir. 2004) (holding that, in the absence of factual findings
> made by the district court based upon an evidentiary hearing, affidavits and other
> evidence submitted by the non-moving party in the context of a Rule 12(b)(3)
> challenge are to be viewed in the light most favorable to that party).[27]

Alternatively, Defendants seek dismissal pursuant to the doctrine of *forum non*

*conveniens.*   That is a common law doctrine now largely limited in federal court to cases where,

as in the case at bar, the alternative forum for litigating the dispute is outside of the United

---

[25]*Moody v. Aqua Leisure International*, 2010 WL 4955397 (S. D. Tex. 2010) (quoting
*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir.2005)).

[26]*See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (declining for the
fourth time to definitively answer the "enigmatic question of whether motions to dismiss on the
basis of forum selection clauses are properly brought as motions under Fed. R. Civ. P. 12(b)(1)
or 12(b)(3) citing *Ginter ex re. Ballard v. Belcher, Predergast & Laporte,* 536 F.3d 439, 448 (5th
Cir. 2008), *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898, 902 (5th Cir. 2005), and
*Haynsworth v. The Corporation,* 121 F.3d 956, 961 (5th Cir. 1997)).

[27]*Id. See also Nissho Iwai Amer. Corp. v. M/V Kyvemitis*, 1998 WL 2853 at * 1-2 (E. D.
La Jan. 5, 1998) (Vance, J.) (discussing *Haynsworth and Mitsui,* citing cases exemplifying the
split in the circuit courts and determining from "Fifth Circuit precedent" and holdings in the
Seventh, Ninth and Tenth Circuits that the proper procedural rule is 12(b)(3)); *Castillo Flores v.*
*Harbor Shipping and Trading Co., S.A.,* 2001 WL 740509 at * 2 n. 1 (E. D. La. June 29, 2001)
(Duval, J.) (stating "the trend in this circuit is that such motions are taken under Rule 12(b)(3)
and noting that the only distinction in 12(b) motions is that under 12(b)(6) consideration of
exhibits would convert the motion to a motion for summary judgment).

States.[28]   Under that doctrine, a court may dismiss an action in favor of an alternative forum when "the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administration and legal problems."[29]

Granting a motion to dismiss for *forum non conveniens* rests in the discretion of the district court exercised upon consideration of numerous relevant factors,[30] including (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law

_____

[28]*See, e.g., Sinochem International Co. v. Malaysia International Shipping Corp*., 549 U.S. 422, 432, 435-36, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (applying the doctrine in favor of the Guangzhou Admiralty Court in China and holding that, when considerations of convenience, fairness and judicial economy so warrant, a district court may bypass jurisdictional questions and dispose of an action on *forum non conveniens* grounds); *American Dredging Co. v. Miller,* 510 U.S. 443, 449-450, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994) (noting that "within federal courts [the doctrine of forum non conveniens] may have been given its earliest and most frequent expression in admiralty cases" but that "the doctrine's application has not been unique to admiralty").  *See also Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV,* 569 F.3d 189 (4th Cir. 2009), *cert. denied*, 130 S.Ct. 1066 (2010) (granting a plaintiff's motion to dismiss its own limitation proceeding on *forum non conveniens* grounds after the plaintiff had an opportunity to seek and obtain injunctions barring parallel U.S. suits).

[29]*American Dredging Co. v. Miller,* 510 U.S. at 447-48 (alteration in original) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted).

[30]*See id.* at 455 (quoting *Piper Aircraft,* 454 U.S. at 257 and  holding that "[w]here the [district] court has considered all relevant public and private factors and where its balancing of these factors is reasonable, its decision deserves substantial deference" and thus will be reversed "only when there has been a 'clear abuse of discretion'").

applies.[31]

In *Gulf Oil Corp. v. Gilbert*, the Supreme Court highlighted that doctrine of *forum non conveniens* was forged the age old problem of plaintiffs' misusing venue to the inconvenience of defendants, stating: "[The problem] is a very old one affecting the administration of the courts as well as the rights of litigants," and "the common law worked out techniques and criteria for dealing with it."[32]   Indeed, "[c]onvenience" is the "central focus of the *forum non conveniens* inquiry"[33] and  "[d]ismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience of the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'"[34]

## IV.  Analysis

### Rule 12(b)(3) Dismissal

At the outset, this court finds that the contracts and underlying transactions in this case are truly and fundamentally international.  Plaintiff Noble Drilling Inc., the buyer (consignee), is an American resident, whereas the shipper (Noble Drilling (Nederland)) is a Dutch entity, the seller (Noble Drilling (Land Support), Ltd.) is based in the United Kingdom and all of the Defendants are Dutch entities, each having their principal place of business in The Netherlands.  The contracts were negotiated in The Netherlands and the subject cargo was shipped on deck trans-

---

[31]*See American Dredging*, 510 U.S. at 448, 114 S.Ct. 981 (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

[32]*Gulf Oil Corp. v. Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842.

[33]*Piper Aircraft*, 454 U.S. at 248.

[34]*Sinochem Int'l*, 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723, 116 S.Ct. 1712 (1996)).

Atlantic from Rotterdam, The Netherlands and lost overboard at sea.  Accordingly, the contracts are truly international; therefore, enforceability of the subject forum selection clause is governed by the *Bremen* test.[35]

Under federal law, a forum selection clause is "*prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[36]  The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid.[37]  The party challenging the forum selection clause bears a "heavy burden of proof" and must "clearly show" that "enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching."[38]  Unreasonableness can be established by a showing that: (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement of the clause "will for all practical purposes be deprived of his day in court" because of grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen

---

[35]*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. at 15-18.

[36]*Id.* at 10, 17.

[37]*Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER,* 515 U.S. 528, 539, 115 S.Ct. 2322, 2329, 132 L.Ed.2d 462 (1995); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991); *M/S Bremen*, 407 U.S. at 15.  *See also Kevlin Services, Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir. 1995) (applying the rule that a forum selection provision in a written contract is *prima facie* valid and enforceable to a pre-printed form contract containing a choice of forum provision); *Belloza v. Chios Sky Shipping & Trading, S.A.,* 1999 WL 694020 ** 2-3 (E. D. La. 1999) (Feldman, J.) (rejecting seaman's claim that forum selection clause was unenforceable as applied to his claim for personal injury because the contract was one of adhesion, procured by defendant's overreaching).

[38]*Bremen*, 407 U.S. at 15; *Carnival Cruise Lines, Inc.,* 499 U.S. at 595 (holding that the moving party bears a "heavy burden of proof" in establishing the invalidity of the forum-selection clause).

law will deprive the plaintiff of a remedy; and (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.[39]

Underlying the Supreme Court's conclusions in *Bremen* were two main concerns: (1) ensuring orderliness and predictability essential to international business transactions;[40] and (2) furthering international comity.[41]  The court now serially addresses Noble's arguments against enforcement of the forum selection clause in the subject bill of lading.

### 1. *Authentication*

Noble contends that this court should not consider the unsworn or unauthenticated Booking Note and Bill of Lading submitted in support of Defendants' Motion to Dismiss because they are not competent evidence.  This court disagrees.   Noble cannot and does not dispute the documents' authenticity in any meaningful fashion.  In fact, plaintiff previously submitted the identical bill of lading into the record replete with Noble's stamp and signature on Page 2 in support of its own motion for partial summary judgment.[42]  Indeed, Bimco Bill of Lading No. ONE VLI ROT 120901 executed by Noble is the basis of Plaintiff's admiralty suit for cargo

---

[39]*Haynsworth v. The Corporation,* 121 F.3d 956, 963 (5th Cir. 1997)(citing *Carnival Cruise Lines,* 499 U.S. at 595, 111 S.Ct. at 1528 and *Bremen*, 407 U.S. at 12-13, 15, 18, 92 S.Ct. at 1914-1915, 196, 1917).

[40]*Bremen,* 407 U.S. at 15 (emphasizing the importance of "present-day commercial realities and expanding international trade").

[41]*Id.* at 9 (noting disapproval of courts' parochial refusal to enforce international agreements and explaining that "[w]e cannot have trade in world markets and international waters exclusively on our terms, governed by our laws and resolved by our courts").  *See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985) (relying on "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes....").

[42]*See* Plaintiff's Motion for Partial Summary Judgment at Exh. "A" (Doc. No. 19-2).

loss.[43]

The standard for authentication, Fed. R. Evid. 901(a), is not a burdensome one and merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be; moreover, Fed. R. Evid. 803(6) does not require records to be prepared by the business which has custody of them.[44]   Clearly, the subject Bimco Liner Booking Note and following form, December 24, 2009 Bimco Liner Bill of Lading, are business records. As previously noted, the Bimco Liner Bill of Lading was previously submitted in support of the plaintiff's own motion seeking partial summary judgment.  In addition, said documents were produced by the Defendants in response to discovery and are the subject of the Plaintiff's requests for admissions which defendant admitted were true and correct copies of the original bill of lading.

Because the very basis of the captioned lawsuit filed by Plaintiff against the Defendants is Bimco Liner Bill of Lading No. ONE VLI ROT 120901,[45]  Noble cannot genuinely dispute that the bill of lading binds it to the contract of carriage.  The front of the bill names Noble Drilling, Inc. as consignee and Noble Drilling Land (Nederland) BV as shipper.  The bill on its face was clearly designed to apply to Noble.  Whereas, typically a bill of lading is only signed by the carrier or his agent,[46] the bottom left of Page 2 of this particular Bimco Form entitled "Full Terms

---

[43]See Notes 6 and 16, *supra*.

[44]See e.g., *International Marine, LLC v. Delta Towing, LLC,* 2011 WL 890680 at **3-5 (E. D. La. Mar. 11, 2011) (McNamara, J.).

[45]See Hill Rivkins LLP's (Noble's) Demand Letter dated July 1, 2010 (re: B/L No. ONE VLI ROT 120901) (Δ's Exh. D/Doc. No. 36-7); Plaintiff's Verified Complaint (Doc. No. 1).

[46]1 Thomas J. Schoenbaum, Admiralty Maritime Law § 10-11, at 44 (4th ed. 2005).

of the Carrier's Bill of Lading Form" was signed by Noble and bears the Noble's "global" seal –

the "O" in Noble being a depiction of the globe.  The subject bill of lading was also signed by

GAC Netherlands on behalf of the Master of the OSC VLISTDIEP on Page one and, on Page two

bottom-right, by the Dutch carrier/time charterer, Onega.[47]   Considering the foregoing, there is

ample precedent for binding Noble, *inter alia*, to the bill of lading contract.[48]

### 2. *Mandatory Forum Selection Clause*

Plaintiff  argues that because the name and address of the carrier were not affixed to the

appropriate box on Page 1 of the Bill of Lading that the forum selection clause is not mandatory

or exclusive and is otherwise ambiguous.  This court is not persuaded as discussed at length

below.

At rock bottom, there is Fifth Circuit jurisprudence which clearly holds that a bill of

lading is not required for a meeting of the minds to have occurred between a cargo owner

(shipper), and a vessel owner (carrier) and that *even provisions of an unissued bill of lading* can

be contractually enforced when the shipper's goods are damaged after the carrier has taken

possession of them.[49]

---

[47]The Bill of Lading and the Booking Note bear the identical signature on behalf of Onega. *Compare* Booking Note (Δ's Exh. B/Doc. No. 36-5) and Bill of Lading No. ONE VLI ROT 120901 (Δ's Exh. C/Doc. No. 36-6 at p. 2 of 4)

[48]*See Taisheng International, Ltd. v. Eagle Maritime Service, Inc.,* 2006 WL 846380 (S.D. Tex. 2006) (act of acceptance binds consignee to contract of carriage even where it did not sign or even appear on the bill of lading in question); *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.,* 2008 WL 1883466 (N. D. Ill. 2008) (noting that even absent such traditional acceptance finding parties bound by actions of their intermediary World and finding provisions in a bill of lading issued to an intermediary bound the consignee and other parties on whose behalf the intermediary arranged shipment).

[49]*See Lukenbach S.S. v. American Mills Co.,* 24 F.2d 704 (5th Cir. 1928).

In *Lukenbach S.S. Co. v. American Mills Co.,* 24 F.2d 704 (5th Cir. 1928), the Fifth Circuit held a shipper to a clause in the bill of lading exempting the carrier from liability for loss of goods by fire, *even though the bill of lading had not been issued* when the fire occurred.[50]  The court held that the carrier was required to issue a bill of lading, the cargo owner was "[p]resumed to know the law, and therefore [the shipper] must have known the terms and conditions on which its goods were received and would be transported would be contained in a bill of lading to be issued later."[51]  The court further explained that "an implied understanding arose from common business experience that the carrier would issue such a bill of lading as was its custom to issue to shippers in the usual course of business."[52]  The *Lukenbach* court concluded that "the shipper, in the absence of a special contract, must be presumed to deliver his goods on terms and conditions usually and customarily imposed by the carrier in the regular course of business."[53]

It is clear under *Lukenbach* that, even if a bill of lading was not actually issued, the bill of lading customarily issued by the carrier would serve as evidence of a contract governing the relationship of the a shipper and a carrier as long, as it would have been issued in the ordinary course of business.[54]  *Lukenbach* has been cited with approval and quoted extensively by courts in this and other districts in support of this proposition.[55]

---

[50]*Id.* at 705.

[51]*Id.*

[52]*Id.*

[53]*Id.*

[54]*Id.*

[55]*See Ventura Maritime Co., Ltd. v. ADM Export Co.,* 44 F.Supp.2d 804, 806-807 (E. D. La. 1999); *Berkshire Knitting Mills v. Moore-McCormack Lines, Inc.,* 265 F.Supp. 846, 848 (S.

The case at bar is even stronger because it is undisputed that the Bimco Liner form Booking note and Bill of Lading (Conlinebill 2000) issued before the cargo risers lashed to the deck of the M/V OSC VLISTDIEP in Rotterdam went overboard in a mid-Atlantic storm.  It also cannot be disputed that the form contracts (Conlinebill 2000) issued in Defendant carrier(s)' normal course of business, such that the forum selection clause was of the type reasonably expected in other carrier's bills of lading.

Here, the pivotal fact is that Defendants' bill of lading was in accordance with the standard form with conditions usually and customarily imposed and not made up to fit a special case after the fact in order to escape liability that had already occurred.[56]  Moreover, Plaintiff Noble relied upon the subject bill of lading when making its initial demand against the vessel, vessel owners and vessel charterer in *The Netherlands*.[57]

Plaintiff misses the mark in its attempt to characterize the subject bill of lading as permissive or "optional."  The permissive/mandatory distinction is relevant only as to whether a forum-selection clause allows suit in a venue other than the one specified in the contract.  Simply stated, the issue is whether the clause permits or requires suit in the named forum.  To preclude suit in another forum, a forum-selection clause "must clearly demonstrate the parties' intent to

---

D. N. Y. 1965); *Interline v. Zim Israel Navigation Co., Ltd.,* 2000 WL 1060445 ** 2-3 (N. D. Cal. July 27, 2000) (citing *Lukenbach, supra*, with approval and enforcing a forum selection clause in an *un*issued bill of lading).

[56]*Ventura Maritime,* 44 F.Supp.2d at 806 (quoting *Lukenbach*).

[57]*See* Hill Rivkins Demand Letter dated July 1st, 2010 (referencing Bill of Lading No. ONE VLI ROT 120901, *inter alia*) (Δ's Exh. "D"/Doc. No. 36-7).

make [the forum] exclusive."[58]  A permissive clause does not prohibit litigation elsewhere but still

functions as consent to the jurisdiction of the named forum.[59]

Noble asserts the language in Clause 4 makes it permissive or optional.  The Court

disagrees as the forum selection clause contains the proper limiting language including "shall"

and "exclusively."  Clause 4 fits well within the mandatory *genre*; use of the imperative "shall"

together with the term "exclusively" leaves no room to doubt the intentions of the parties.

This court is not convinced by Plaintiff's argument that bills of lading are contracts of

adhesion and strictly construed against the carrier.[60]  The subject bill of lading issued on a

common, internationally recognized form called a "Conlinebill 2000." Given the facts before this

court and the totality of the circumstances, Noble should have known what was around the corner.

In this circuit, all bills of lading are not generally and uniformly characterized as contracts of

adhesion, as Plaintiff suggests.[61]

Indeed, a contract of carriage need not define every term with absolute clarity to be

enforceable.[62]   For example, in *Union Steel America Co v. M/V Sanko Spruce (" Union Steel I "),*

---

[58]*City of New Orleans v. Municipal Administrative Services,* 376 F.3d 501, 504 (5th Cir.
2004); *Collin County v. Siemens Bus. Servs., Inc.,* 250 F. App'x 45, 50-51 (5th Cir. 2007)
(unpublished) (citing *Keaty v. Freeport lndonesia., Inc.,* 503 F.2d 955, 966-67 (5th Cir. 1974)).

[59]*Excell, Inc. v. Sterling Boiler & Mechanical., Inc.,* 106 F.3d 318, 321 (10th Cir.1997);
*Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 128 (5th Cir.1994).

[60]*See* Plaintiff's Memorandum in Opposition at p. 7 (Doc. No. 30).

[61]*See Mitsui & Co. (USA), Inc. v. MIRA M/V, Euro-Baltic Lines, Inc.,* 111 F.3d 33, 36 (5th
Cir. 1997) (rejecting the argument that a bill of lading was a contract of adhesion and holding
that the plaintiff accepted and incorporated terms of the bill of lading when it filed suit under
same);

[62]*See e.g., Steel Warehouse Co., Inc. v. Abalone Supply Ltd. of Nicosia,* 141 F.3d 234,
237 (5th Cir. 1998) (noting that precedent allows for quite a bit of leeway in drafting such clauses

14 F.Supp.2d 682 (D. N. J. 1998), the court was presented with the argument that a forum selection clause should not be enforced because the clause gave the carrier the option of litigating *in the carrier's home forum* or submitting to arbitration in New York.[63]  The plaintiff argued that the clause was invalid because the contract *did not unambiguously resolve which entity was the "carrier"* and thus might induce the plaintiff to file a claim in the wrong forum.[64]   The court rejected this argument, observing:

> That a potential plaintiff cannot be certain as to where it should bring suit does not mean that the forum selection clause no longer is mandatory. If the clause is not clear, and the parties dispute its meaning, then litigation might be necessary to secure a controlling interpretation. But this contractual provision does not cease to bind simply because it requires a court to interpret it.[65]

Similarly, in *Fireman's Fund Insurance Co. v. M/V DSR Atlantic*, 131 F.3d 1336 (9th Cir. 1997), the Ninth Circuit reached a similar result concluding that some uncertainty as to where an action may be brought does not rise to the level of a "serious inconvenience" that would invalidate an otherwise enforceable forum selection clause.[66]

---

(meaning incorporation by reference) and does not require a punctilious degree of specificity).

[63]*Union Steel America Co v. M/V Sanko Spruce (" Union Steel I ")*, 14 F.Supp.2d 682, 687 (D. N. J. 1998).

[64]*Id.*

[65]*Id.  See also Union Steel America Co. v. M/V Sanko Spruce* ( Union Steel II ), 1998 WL 1085910 ** 1, 5(D. Or. Aug. 11, 1998) (considering the enforceability of a "carrier's option" clause in a bill of lading that allowed the carrier to elect either to sue in its principal place of business (Korea) or to submit to arbitration in New York, holding that the mandatory nature of the clause "is not affected by the fact that the carrier ... has the option to arbitrate the dispute in New York," enforcing the forum selection clause and concluding that it "mandates that litigation take place in one of two contemplated fora and thereby excludes all other fora").

[66]*Fireman's Fund Insurance Co. v. M/V DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1997)(citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

"The clear implication of these cases is that a forum selection clause will not be deemed permissive or unenforceable solely because its terms may give rise to disputes concerning the propriety of a particular venue."[67]  Thus, the fact that the parties might require a court to determine where either Onego or Scheepvaartonderneming's principal place of business is domiciled does not alter the mandatory character of the forum selection clause in Bimco Liner Bill of Lading No. ONE VLI ROT 120901.  Suffice it say, whether Scheepvaartonderneming, Onega or both are determined to be carriers by any court, both have their principal place of business in The Netherlands – *i.e.*, the place where Noble made formal demand before filing suit in this district.[68]

Although Plaintiff vigorously contests the enforceability of the subject forum-selection clause, it does not dispute that its claims fall within the broad ambit of Clause 4.  The Verified Complaint, factual allegations therein and plaintiff's demand letter referencing the bill of lading/contract at issue (Doc. No. 36-7) reflect that Plaintiff's claims fall within the broad scope of the forum-selection clause.

### 3. *Unreasonableness under Bremen and its Progeny*

Under the *Bremen* test, the question is not whether the contract, itself, is the product of fraud or overreaching.  Instead, the court's focus is whether the inclusion of the forum selection

---

[67]*American Home Assurance Co. v. TGL Container Lines, Ltd.*, 347 F.Supp.2d 749, 758 (N. D. Cal. 2004).

[68]*See Baosteel America, Inc. v. M/V OCEAN LORD*, 257 F.Supp.2d 687, 688 (S. D. N. Y) (finding a clause that used the term "shall" was mandatory and further finding that "flag-state of the ship" was a "sufficient forum description"); *Ormet Primary Aluminum Corp. v. M/V FU AN CHENG,* 681 F.Supp.2d 737, 739 (E. D. La. 2009) (Feldman, J.) (finding "flag-state" is not an ambiguous designation and that the forum selection clause in the bill of lading is unambiguously mandatory).

clause in the contract was fraudulent or coerced.[69]   Plaintiff does not allege that Defendants

engaged in fraud or any deceitful activity.  Noble suggests the clause is overreaching because it

consists of a boilerplate provision in a contract of adhesion.

The Supreme Court has held that forum selection clauses in form types of contracts are

enforceable, so long as they satisfy "judicial scrutiny for fundamental fairness."[70]  The forum

selection clause in *Carnival* was held to be fair, despite the disparity of bargaining power between

the parties, because: (1) the defendant had a valid reasoning for limiting the fora in which it could

be subject to suit; (2) the defendant was headquartered in the chosen forum; (3) the clause

reduced confusion for prospective litigants; and (4) the clause likely benefitted the plaintiffs by

reducing the price they paid for the defendant's services.[71]   At least the first three of the four

arguments apply in this case and thus support a finding that the forum selection clause in Bimco

Liner Bill of Lading (Conlinebill 2000) is not fundamentally unfair.  That all of the parties are

sophisticated commercial business entities is beyond cavil.

The court finds that Plaintiff has not and cannot clearly show the insertion of the clause

represents overreaching. The form nature of the contract militates against any such finding.

Moreover, the disparity of bargaining power would apply uniformly to all potential shippers,

merchants, and consignees, including Noble Drilling (Nederland), Noble Drilling Land (U.K) and

Noble Drilling Inc. (US).  Noble has not alleged that Defendant's insertion of the forum selection

---

[69]*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir.), *cert. denied,* 523 U.S. 1072, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998).

[70]*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (upholding a clause that was contained within the fine print that accompanied the plaintiffs' cruise tickets).

[71]*See id.* at 594, 111 S.Ct. 1522.

clause into the Bimco Liner Bill of Lading was, in isolation, an act of overreaching. Therefore, it has not satisfied the first prong of the *Bremen* test of "unreasonableness."[72]

The court observes that consideration of whether the enforcement of a forum clause might be unreasonable" appears to be a variation on the doctrine of *forum non conveniens*, but with the "heavy burden" placed on the party seeking to avoid enforcement of the clause, in this case Noble.  The Supreme Court ruled in this connection that the chosen forum must be shown to be "seriously inconvenient for the trial of the action"[73] and that the resisting party should bear "a heavy burden of proof."[74]  Since the claimed inconvenience would generally be foreseeable at the time the freely negotiated agreement was entered, "it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be [so] gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."[75]

In applying the *Bremen* "reasonableness" standard, courts look at several factors, including (1) inconvenience of the parties and witnesses, (2) the governing law, and (3) the availability of remedies in the chosen forum.  Again, the hardship must be significant for the enforcement of the clause to be unjust.  Mere inconvenience or additional expense will not suffice.

In the case at bar, private factors associated with inconvenience lead inexorably to the conclusion that the litigation forum should be The Netherlands.  Here, the vessel is a Dutch flag

---

[72]*See Haynsworth*, 121 F.3d at 963.

[73]*Bremen,* 407 U.S. at 16, 92 S.Ct. at 1916,

[74]*Id.* at 17, 92 S.Ct. at 1917.

[75]*Id.* at 18, 92 S.Ct. at 1917.

vessel, owned by Dutch entity Scheepvaartonderneming, managed by Dutch entity Feederlines, chartered by Dutch entity Onega.  The risers and cradles (packing) were manufactured or fabricated by Dutch entities, shipped by Dutch entity Noble Drilling (Nederland) B.V. and loaded in the Dutch port of Rotterdam by Dutch nationals.  The loading and stowage of the risers on deck was accomplished on Noble's behalf by a Dutch surveyor with freight payments being made by Dutch entity Noble Drilling (Nederland) B.V. to its Dutch freight forwarder CEVA Freight Holland B.V.  The lost risers owned by Noble Drilling (Land Support), Ltd. based in the U.K. went overboard in the Atlantic Ocean approximately 200 miles off the northwest coast of Spain.

The court is not convinced that there is any real inconvenience associated with litigation in The Netherlands.  For instance, it remains to be seen whether a state-side post-loss survey of the nineteen *absent* risers and the cradles that stowed them or the *post*-loss condition of the one remaining riser and the vessel prove to be relevant in any fashion.  Certainly, the relevant surveys were those conducted before the vessel departed by surveyors located in The Netherlands. Additionally, there appears to be a major issue regarding suitability of the cradles, which were fabricated in Huisman, Schiedam, The Netherlands. (Doc. No. 36-8)   Moreover, securing the cradles to the deck of the OSC VLISTDIEP and stowage of the risers also occurred in Rotterdam. CEVA Freight Holland B.V. had representatives at the loading port in Rotterdam, who attended the loading on behalf of Noble.  (Doc. No. 36-5).   Plaintiff has failed to explain as required exactly how CEVA's counterparts in the United States could have anything to add.  In any event, this court agrees with defendants that surveyors in the United States under the control of the parties can be produced in The Netherlands, should they have relevant evidence to add that is not the subject of stipulation.

23

In sum, the court finds that Noble's argument is self-serving and conclusory. Plaintiff has failed to demonstrate that any real actual or projected additional expenses that may be incurred by litigation in The Netherlands, much less that said additional expense is so grave as to effectively deny plaintiff its day in court. "If additional costs or inconveniences are to present a barrier to enforcement of a forum selection clause, they must be so grave that they create a situation where the plaintiff 'will for all practical purposes be deprived of his day in court.'"[76]

Noble contends that substantial deference should be accorded its selection of this forum and that a plaintiff's choice of forum is generally entitled to greater deference when a plaintiff has chosen his home forum. Recent jurisprudence suggests that this factor should not be given dispositive weight because contractually selecting a forum for future litigation is not an impermissible waiver of rights and does not violate public policy.[77] Dismissal should not be automatically barred because a resident filed suit in his home forum. As always, if the balance of inconveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendants or the court, dismissal is proper.[78]

Noble must make a "real showing" of inconvenience here that outweighs the

---

[76]*Pugh v. Arrow Elec., Inc.,* 304 F.Supp.2d 890, 895(N. D. Tex. 2003); *Abramson v. America Online, Inc.,* 393 F.Supp.2d 438, 443 (N. D. Tex. 2005) (expense of trying a case in a particular forum is insufficient to satisfy a party's burden under *Bremen).*

[77]*See Calix-Chacon v. Global International,* 493 F.3d 507, 515 n. 5 (5th Cir. 2007) (observing that a forum selection clause is a contractual waiver of the right to seek transfer or dismissal based on the parties' own inconvenience and noting that, where the parties have agreed on a forum, the factors relevant in a forum non conveniens analysis would seem to apply with even greater force in favor of the chosen forum).

[78]*Piper Aircraft Co. v. Reyno,* 454 U.S. at 255-256 (noting that, under *Gilbert,* dismissal will ordinarily be appropriate where trial in the plaintiff's forum imposes a heavy burden on the defendant or the court and where plaintiff is unable to offer specific reasons of convenience supporting his choice).

inconvenience that the defendants have demonstrated.  The court observes that Plaintiff has made it clear that it is also suing in a representative capacity as agents and trustees of the foreign shipper (Noble Drilling Land (Nederland) Inc.)  and the foreign cargo owner (Noble Drilling (Land Support) Ltd. based in the United Kingdom.[79]  Federal courts have long treated motion for *forum non conveniens* dismissals differently depending on whether a United States plaintiff is suing in his own right or is in reality a nominal plaintiff, suing as an assignee, subrogee, or representative of a foreign company.[80]

In *Tjontveit v. Den Norske Bank ASA*, 997 F.Supp. 799 (S. D. Tex. 1998), the court observed:

> In the latter case, "courts have generally refused to give special deference to the domestic forum choice of a nominally American plaintiff."  *Pain,* 637 F.2d at 798. In any event, "American citizens and residents have no indefeasible right of access to federal courts."  *Id.; see Ionescu v. E.F. Hutton & Co. S.A.,* 465 F.Supp. 139, 145 (S. D. N. Y. 1979).[81]

While this court accords some deference to Noble's choice of this forum, the Defendants' inconvenience greatly outweighs the deference due to this choice in view of the extremely tenuous relationship of the underlying dispute to the Eastern District of Louisiana.  Even Noble Drilling, Inc., the only non-foreign entity, does not maintain a principle place of business in the Eastern District of Louisiana.[82]

---

[79]*See* Verified Complaint at ¶ I-9 (Doc. No. 1).

[80]*Tjontveit v. Den Norske Bank ASA,* 997 F.Supp. 799, 805 (S. D. Tex. 1998) (citing *Caton v. Leach Corp.,* 896 F.2d 939, 942 (5th Cir. 1990),  *Mitsui & Co. (USA), Inc. v. Mira M/V,* 111 F.3d 33, 35 (5th Cir. 1997)).

[81]*Tjontveit*, 997 F.Supp. at 804-805.

[82]*See* Verified Complaint at Addendum A (stating "Plaintiff, **Noble Drilling Inc**., was and now is a *Delaware* Corporation or other business entity with offices and places of business

Now turning to the issue raised by Plaintiff relating the Letter of Undertaking posted as security by OSC VLISTDIEP to avoid arrest in this district, it does not supersede or limit the parties' forum-selection agreement.[83]  Vessel interests expressly reserved any all rights, defenses and objections, including jurisdictional and venue defenses which the M/V OSC VLISTDIEP and/or her owners may have.  Moreover, "the deprivation of the right to proceed against the vessel *in rem* does not make enforcement of a forum selection clause unreasonable.[84]

In this circuit, federal law also determines whether a choice-of-law provision is enforceable.[85]  Like forum selection clauses, choice of law clauses are presumptively valid.  They

---

in *Baton Rouge*, LA and *Houston* TX") (italicized emphasis added) (Doc. No. 1).

[83]*See Trafigura Beheer B.V. v. M/T PROBO ELK,* 266 Fed.Appx. 309, 2007 WL 2033336 *1 (5th Cir. 2007) (unpublished) (rejecting the argument that a letter of undertaking superseded a forum selection clause; although the defendants submitted to the court's jurisdiction by virtue of a letter of undertaking, "a party's mere appearance as a claimant does not waive venue."), *cert. denied,* 552 U.S. 1182, 128 S.Ct. 1231, 170 L.Ed.2d 63 (2008); *Breakbulk Transp., Inc. v. M/V RENATA,* 2008 WL 1883790 * 3 (S. D. Tex. 2008).  *See e. g., Tennyo Maritime, Inc. of Liberia v. Norsk Hydro S.S. of Oslo,*1995 WL 155657 (E. D. La. Apr. 3, 1995) (Carr, J.) (noting that courts have held that a party does not waive jurisdictional and venue objections by the filing of a counterclaim, cross-claim or 3rd party complaint, even when it is not voluntarily withdrawn, citing *Queen Noor, Inc. v. McGinn*, 578 F.Supp. 218, 220 (E. D. Tex. 1984)(collecting cases)).

[84]*See Breakbulk Transp., Inc. v. M/V RENATA,* 2008 WL 1883790 (S. D. Tex. 2008) (rejecting plaintiff's argument based solely on German law not recognizing an action *in rem* against the vessel or not allowing a maritime lien for cargo loss, noting that these are not substantive duties imposed by COGSA such as would nullify a forum selection clause but rather, simply "mechanisms for enforcement of [COGSA] duties").  *See also, Mitsui & Co. v. Mira M/V*, 111 F.3d 33, 35-36 (5th Cir. 1997) (per curiam) (discussing *SKY REEFER*); *Thyssen, Inc. v. Calypso Shipping Corp*., S.A., 310 F.3d 102, 107 (2nd Cir. 2002) (observing that the assumption "that the lack of an *in rem* cause of action could be considered a violation of COGSA ... contradict[s] most case law on the matter").

[85]*See Haynsworth,* 121 F.3d at 962 (applying the *Bremen* test to determine the enforceability of forum selection and choice-of-law clauses); *Taisheng International, Ltd. v. Eagle Maritime Services, Inc.,* 2006 WL 846380, at * 2 (S. D. Tex. 2006) (citing *Haynsworth,* 121 F.3d at 962).

are generally upheld if reasonably related to the transaction and the chosen law is not contrary to the fundamental policy of the forum.

Plaintiff in this case attempts to make "much ado" about potential loss of its statutory remedies under COGSA under Dutch law.  Although COGSA imposes some limitations on the parties' authority to adjust liability, it does not limit the parties' ability to adopt forum-selection clauses.[86]

Whether U.S. law, COGSA or the Harter Act apply to this case, *ex proprio vigorie*, by default or contractually is a non-issue in light of the Conlinebill 2000 form which provides the following clause in addition to the forum-selection and choice of law clause, to wit:

> **ADDITIONAL CLAUSE**
> **U.S Trade, Period of Responsibility**
> **(I)** In case the contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America 1986 (U.S. COGSA) then the provisions stated in said Act shall govern before and after discharge and throughout the entire time that the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
> **(ii)** If the U.S. COGSA applies and unless the nature and value of the cargo has been declared by the shipper before the cargo has been turned over to the Carrier and inserted in the Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD $500 per package or customary freight unit.[87]

As previously noted at the outset, the "Law and Jurisdiction" provision of the bill of lading  (Clause 4) states with respect to choice of law that: "Disputes arising out of or in

---

[86]*See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S.Ct. 2433, 2440 (2010) (*citing Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 537–539, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)).

[87]Bill of Lading No. ONE VLI ROT 120901 (Exh. A/Doc. No. 19-2, Exh. B/Doc. No. 24-2 and Exh. C/Doc. No. 36-6).

connection with this Bill of Lading shall be exclusively determined ... in accordance with the law of the place where the carrier has his principal place of business... *except as provided elsewhere herein*."[88]

Here, Dutch law is the choice of the parties and, as such, Dutch law at least governs the construction of the bill of lading.  Plaintiff incorrectly argues that Defendants have failed to show that U.S. maritime cargo law would be observed in The Netherlands, the parties' exclusive forum of choice.  Under *Bremen*, it is the Plaintiff which must bear the "heavy burden" of clearly showing the inadequacy of the Dutch court.

Considering the "Additional Clause" pertaining to "U.S. Trade" in the Bill of Lading and, assuming COGSA does apply, the choice of law clause does not appear to operate as a prospective waiver of a party's right to pursue his statutory remedies.  The Supreme Court in *SKY REEFER* reserved condemnation only in the situation that it was persuaded that the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies.[89]  The *Bremen* decision "clearly eschewed" the "provincial solicitude for the jurisdiction of domestic forums" which Plaintiff suggests is appropriate in this case.

In *Haynsworth*, the Fifth Circuit observed that, since The *Bremen,* the Supreme Court has consistently held that federal courts must presumptively enforce forum selection clauses in international transactions and "in fact, has enforced every forum selection clause in an international contract that has come before it."[90]  The court further emphasized:

---

[88]*Id.* (italicized emphasis added).

[89]*SKY REEFER,* 515 U.S. at 540 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 637 n. 19).

[90]*Haynsworth*, 121 F.3d at 962.

> As we recently stated in a case implicating these concerns, "[t]he Supreme Court has therefore instructed American courts to enforce [forum selection and choice of law] clauses in the interests of international comity and out of deference to the integrity and proficiency of foreign courts. *Mitsui,* 111 F.3d at 35 (citing *Mitsubishi,* 473 U.S. at 629, 105 S.Ct. At 3355-56).[91]

As the SKY REEFER Court makes abundantly clear, "nothing in [§ 3(8)] suggests that the statute prevents parties from agreeing to enforce [the obligations imposed by COGSA] in a particular forum."[92]

Plaintiff's complaints about Dutch law are non-specific, merely conclusory and find no support in the case law.  Nevertheless, the court notes that in *ITEL Container Corporation v. M/V TITAN SCAN*, 139 F.3d 1450, 1998 A.M.C. 1965 (11th Cir. 1998), the court considered the effect of an identical forum selection clause that would prescribe the application of Dutch law.[93]  The comments of the court pertaining to the application of the law of The Netherlands bear repetition, to wit:

> The "carrier" for purposes of the Candyline/Mammoet agreement was Mammoet, whose principal place of business is Amsterdam rather than London.  Thus, Clause 3 calls for the application of Dutch law.  Clause 3, however, is an inadequate ground to distinguish the Itel/Candyline contract from the Candyline/Mammoet contract, for two reasons. First, Clause 3 specifies that "[a]ny dispute shall be decided in the country where the carrier has his principle place of business, and the laws of such country shall apply except as provided elsewhere herein."  Clause 10, a typewritten phrase added by the parties, specifically provided for the application of English law.  Second, even if Clause 10 were eliminated, **The Netherlands, like England, has adopted the Hague-Visby Rules.  Thus, even if the liability limits of the contract were governed by Dutch law, the higher liability limits contained in the Hague-Visby Rules would nevertheless apply.**  *See* 6 Benedict

---

[91]*Id.*

[92]*SKY REEFER,* 515 U.S. at 535.

[93]*See ITEL Container Corporation v. M/V TITAN SCAN*, 139 F.3d 1450, 1455-56, 1998 A.M.C. 1965 (11th Cir.), *cert. denied sub. nom., Mammoet Shipping B.V. v. Sky Shipping Ltd.,* 525 U.S. 962, 119 S.CT. 405, 142 L.Ed.2d 328 (1998).

on Admiralty, 1-30 (Frank, L. Wiwall ed., 1998).  We therefore conclude that Clause 3 is not an appropriate ground upon which to distinguish the ... agreement[s].  **If anything Clause 3 evidences an intent to abrogate the liability limits of the U.S. COGSA in favor of a foreign statutory scheme with higher liability limits.[94]**

In *Van Ommeren Bulk Shipping B. V. v. Cooper/T. Smith Stevedoring Co., Inc.*, 35 F.Supp.2d 469 (D. Md. 1999), the district court explained the interplay between the various statutory remedies governing carriage of goods by sea between port of loading and port of discharge, as follows:

> The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1300 et seq., (COGSA), was enacted in 1936 to codify the "American version of ... the Hague Rules." *Wemhoener*, 5 F.3d at 741.  COGSA applies compulsorily to all "carriage of goods by sea to or from ports of the United States." 46 U.S.C.App. § 1300.
>
> * * *
>
> In 1968, the Hague Rules were amended by the Visby Rules, which raised the per package amount of carrier liability. *See* Visby Rules Art. II(a), reprinted in Saul Sorkin, Goods in Transit, App. M (Vol. 7 1998).[95]  The United States has not adopted the Visby Amendments and thus retains the $500 per package limit contained in COGSA. The original Hague Rule preventing a carrier from decreasing its liability, however, was not modified by the later Visby amendments; therefore, a nation's adoption of either the initial Hague Rules or the latter

---

[94]*Id. See also Foster Wheeler Energy Corp. v An Ning Jian M/V*, 383 F.3d 349, 360-61 (5th Cir. 2004) (reversing the district court's ruling that COGSA governs the quantum of damages owed, remanding the case for calculation of damages in accordance with the *higher* limit prescribed by the Hague-Visby Rules and finding that the jurisdiction clause did not suffice to overcome the Hague-Visby Rules referenced in the General Paramount clause (Clause 3)); *compare* Bill of Lading ONE VLI ROT 120901 at Clause 3 (regarding "Liability for Carriage Between Loading Port and Port of Discharge," providing "the Hague-Visby Rules apply")(Δ's Exh. B/Doc. 24-2).

[95]The Visby amendments provide that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the goods in an amount exceeding the equivalent of 10,000 francs per package or unit or 30 francs per kilo of gross weight of the goods lost or damaged, whichever is the higher." These rules were amended by the 1979 Brussels Protocol, which changed the liability amount to no more than "666.67 units of account per package or unit or 2 units of account per kilogramme of gross weight of the goods lost or damaged, whichever is higher."

Hague-Visby amendments, does not change the prohibition against a carrier lessening its liability.[96]

*Van Ommeren Bulk Shipping B.V.*, 35 F.Supp at 472.[97]

## CONCLUSION

"Because a forum selection clause is deemed presumptively valid, the party seeking to avoid its enforcement has the burden of establishing the lessening of carrier's liability under foreign law.[98]  Clearly all of the parties in this case are amenable to process in The Netherlands. Plaintiff has failed to carry its "heavy burden" under the *Bremen* test and failed to make the requisite showing with respect to the application of Dutch law.  The Court finds it more appropriate to dismiss Plaintiff's case in its entirety pursuant to the Defendants' Rule 12(b)(3) motion based upon the validity of the forum selection clause in Bill of Lading ONE VLI ROT

---

[96]*See* Hague Rules, Art. 3(8) ("Any clause, covenant, or agreement in a contract or carriage relieving the carrier or the ship from liability for loss or damage ... or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.").

[97]*See also Silgan Plastics Corp. v. M/V NEDLLOYD,* 1998 WL 193079 * 3 (S. D. N. Y. 1998) (citing *SKY REEFER*, *supra*, and holding that (1) Dutch law provides a full recovery "if it is proved that the damage resulted from an act or omission of the carrier done with into to cause damage, or recklessly and with knowledge that the damage would likely result,"(2) "mere speculation that the application of Dutch law might reduce defendants' obligations does not in and of itself render the forum selection clause invalid under COGSA § 3(8) and (3) Dutch cargo law is based on the Visby Amendments which increased the carrier's limitation of liability); *Coutinho & Ferrostaal, Inc. v. M/V SPAR TAURUS,* 2010 WL 3238938 * 2 (S. D. N. Y. 2010) (quoting *Silgan Plastics* and *SKY REEFER*, *supra*, for the proposition that "the party seeking to avoid enforcement has the burden of establishing the lessening of carrier's liability to a cargo owner under foreign law"); *American Home Assur. Co. v. M/V JAAMI*, 2007 WL 1040347 * 2 (S. D. N. Y. 2007) (finding it appropriate to dismiss the case albeit without prejudice as opposed to administrative closure and retaining jurisdiction, explaining that the only lessening of liability plaintiffs alleged was that their claims would be time-barred in the foreign forums which is not a basis for invalidating a foreign forum selection clause).

[98]*Silgan Plastics,* 1998 A.M.C. 2163, 1998 WL 193079, at * 2 (citing *SKY REEFER,* 515 U.S. at 538).

120901 dated December 24, 2009.  Of course, dismissal of the case will be with*out* prejudice, since the court does not reach the merits of plaintiff's claims.  Accordingly and for the reasons stated above the court issues the following orders, to wit:

**IT IS ORDERED** that the Defendants' Rule 12(b)(3) Motion to Dismiss Case (Doc. No. 24) is GRANTED without prejudice to Plaintiff's right to refile this case in The Netherlands.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. No. 19) is DISMISSED AS MOOT and without prejudice to its right to reurge same in the proper forum.

**IT IS FURTHER ORDERED** that Skuld's Motion to Dismiss Direct Action (Doc. No. 23) is DISMISSED AS MOOT.

New Orleans, Louisiana, this <u>12th</u> day of April, 2011.


_____
A. J. McNAMARA
UNITED STATES DISTRICT JUDGE